The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you. Please be seated. We're glad you could be here with us today. Welcome. We're hearing three cases today and we can start with our first, number 24, 1261, John Koontz v. SN Servicing Corporation. May it please the Court, my name is Jay Stone King. I'm with the law firm of Bailey & Glasser and today I'm representing the plaintiff, John Koontz. This case presents a vitally important issue for consumers. Where there's a clear violation of the FDCPA, is the lender effectively given an immunity for that violation simply because the debtor obtained a bankruptcy discharge? We believe the answer to that question is an emphatic no and that's supported by three cases. The first case is Johnson v. Home State Bank, where the Supreme Court held that even where a debtor's personal liability has been discharged, the debtor still has an enforceable obligation under the note and the mortgage. Next is Obdusky v. McCarthy & Holfus, where the Supreme Court held that foreclosure is in fact a form of debt collection that's subject to the FDCPA. And the third case is Guthrie v. PHH Mortgage, where this Court held that a claim alleging debt collection violations isn't preempted by the bankruptcy code and can be brought even after a debtor has received a discharge. And these three cases together completely undercut the trial court's finding. Specifically, the trial court held that the lender, in this case through its servicer, no longer had any relationship with Mr. Koontz and that Mr. Koontz's mortgage debt was no longer an enforceable obligation. Because the trial court got it wrong, we asked for a reversal so that Mr. Koontz's debt collection cases can proceed. Very briefly, Mr. Koontz went through a bankruptcy in 2017 and obtained a discharge from the bankruptcy court. Coming out of the bankruptcy, Mr. Koontz, like many debtors, chose what's come to be known as the ride-through option. He brought the loan current and began making payments every month under the terms of the note. And he faithfully made those payments over the course of the next six years. Eventually, S.N. Servicing became the servicer for this mortgage loan and right away it began charging. Do we have to decide right now whether he in fact faithfully made the payments? I think your friends on the other side disagree with that. I'm sure they do. No, that is not essential to deciding the issue on this matter because it's in the form of a motion to dismiss. Can you explain how this bankruptcy ride-through works? Certainly. I know that one of the options for a debtor is to reaffirm the loan. And if the loan is reaffirmed, then the debtor comes out of the bankruptcy with his personal liability intact. And a ride-through differs from that because rather than reaffirming, the debtor comes through the bankruptcy with only a non-recourse obligation. And that's essentially where the... Which sort of creates a have your cake and eat it too kind of situation for the debtor because you're not personally liable but you still get to keep the house. What does the creditor get when the debtor does? I mean, I guess they don't have to foreclose. It just seems to be this weird sort of like you can get both the bankruptcy discharge and get to keep your stuff, which admittedly it's been a long time since I've taken bankruptcy, but my normal understanding is the whole point of bankruptcy is I don't get to keep my stuff and in exchange my debts go away. I'm not a bankruptcy lawyer either, but the ride-through was originally something that was developed through case law. This court, in fact, adopted the ride-through for bankruptcy cases arising in our bankruptcy courts. And then Congress in 2005, I believe, revamped the bankruptcy code and basically codified ride-through for home mortgages. It was eliminated for personal property, but it was codified for situations like this where there's a home and a home mortgage. Can you address your colleague's argument about the Lovegrove case? Yes. I've got a couple of things to say about Lovegrove. Lovegrove is really only relevant to the assignment of error relating to whether this service or SN was engaging in debt collection activity. The first issue is whether the discharge eliminates any claim that Mr. Koontz has, and we certainly argue that it does not. Lovegrove dealt with the debt collection aspect of the case, and it's distinguishable for a couple of reasons. Number one, the issue in Lovegrove was whether the lender was attempting to collect a debt that had already been discharged. Was the creditor trying to collect personally against the debtor a liability that had already been extinguished through the loan? But this case is different. This case is an illegal fee case, and it has all the hallmarks of debt collection. SN charged a late fee. SN sent correspondence to Mr. Koontz notifying him of the late fee, and there was a specific threat that was made concerning foreclosure. Right, but there was also a disclaimer. There was a disclaimer, but we don't believe that the disclaimer is applicable in cases involving actual obligation. The disclaimer ordinarily comes up in cases alleging an alleged obligation, and Lovegrove was one of those. As I mentioned, the case in Lovegrove was a debtor who had a debt of $1,000. When the loan came out of bankruptcy, the lender allegedly was attempting to collect the debt personally, even though the debt had already been discharged. That's an alleged obligation case, and so in that kind of a scenario, it's certainly relevant to be looking at the disclaimer, because you look at all of the circumstances to determine whether there's debt collection happening. The disclaimer is a part of that mix. What do you want us to say about those, that they are on their face and as a matter of law debt collection efforts, or that your client adequately alleged that they are? I'm not sure what you want us to hold with respect to those letters. I think that at this stage, the motion to dismiss stage, it's only necessary for you to say that we adequately pled that those letters were in fact debt collection. What's discovery going to add to the mix here? We have the letters in the record. We do, and I don't know that it would add much. Can I ask you a question that is somewhat related to that one? It goes to the nature of the relief that you are seeking, and I'm really just making a bunch of assumptions for the sake of argument. But just assume theoretically I agree with you that the district court was incorrect in its reasoning. You want us to reverse and remand, obviously, and would the idea be like we're reversing, we're remanding, and this case goes to discovery? Or are there other motion to dismiss arguments floating out there that the district court hasn't yet addressed? So far as I know on this record, there are no other motion to dismiss issues. So you want us to write an opinion that says reversed, you've got this wrong, this case goes to discovery? Yes. And again, going back to Lovegrove, Judge Berner, we believe that Lovegrove simply doesn't apply to this kind of case. An illegal fee case, because you're looking at those two letters. One of them specifically assessed a fee. It's the only thing in the letter. It's a statement that there is a fee that's being charged to your account in the amount of, I believe it was $24. And that fee is due an owing, and then there is a specific threat of foreclosure. And in fact, the irony is that this threat of foreclosure was actually in the disclaimer. So the disclaimer is at the top of the letter. It's in all caps. It's italicized. So clearly, it's meant to draw the eyes of the reader. And what the disclaimer says is that this is a step in the enforcement of the law. Of our mortgage rights, our right to proceed with our lien, and the rights that we have to enforce our lien. I guess, Counselor, the way you're presenting the argument, these are sort of two separate questions. One is, is there an obligation? And if there is, is this debt collection activity? But it strikes me that they're somewhat related because you're relying on language from the Supreme Court that basically says, look, a foreclosure is a means of enforcing a debt. And if that's right, and a letter says we're going to foreclose, how is that not threatening collection? It seems to me that your arguments are actually quite related. They are interconnected. I believe that's correct, Your Honor. And again, the irony is you have within these letters the threat to foreclose, which is being made in the disclaimer. So it's an attempt to disclaim something that the disclaimer itself is in fact doing. It is threatening to enforce a lien. And you're correct, Judge Harris. The Obdusky case clearly states that foreclosure, any kind of lien enforcement, is debt collection activity. Can I take you to the 1692E part? So this is the part where alleging that they did something that violates the statute. And as I read the district court, the district court said, on that part of it, you did not plead enough under E, but you did plead enough under F. First, is that your understanding as well, that that's what the district court said? I believe that's correct. Okay. So then in your brief, you say, like, basically in a sentence, the district court was wrong about the E conclusion. This is on page 10 of your brief. I mean, but the district court, what I read the district court as saying is, you haven't adequately alleged a violation of E because you just like assert a violation of E without like saying how or what violated E. And then I have a brief from you that says, but we did. What is the best thing you've alleged that would support a violation of E? I'm sorry, Judge Haynes, what was the page number? Sorry, this is page 10 of your brief. Third, the district court erroneously concluded that Mr. Koonce failed to sufficiently plead false or misleading representations. Sorry, the section of the brief is 33 to 35. That's like the part of the brief that you make the argument. What the district court said, you haven't identified what subsection of E you claim they violated. What subsection of E do you claim they violated? I don't know that we have to specify a subsection. I don't know if you have to specify in your complaint, but for me to conclude that you've adequately stated a claim under E, I have to know what part of E you're claiming they violated. So what part of E are you claiming they violated? Well, I think our allegation would be that there was conduct by the lender that misrepresented the status of this debt. I don't have E in front of me. What subsection of E does that violate? I apologize. I don't have that part of the statute in front of me either. But clearly you have a misrepresentation of the debt and the amount that's owed under the debt. And that's a classic way of pleading and presenting these kinds of debt collection claims. It just seems weird to me if a district court says you haven't stated a claim because you haven't identified the subsection and you still can't identify the subsection. I apologize for that, Your Honor. And if it would be helpful, Judge, I would be happy to do that following today's argument. I can see that I'm coming close to the end of the argument, so I do want to tie up a couple of things if I can. Number one, we believe that the trial court here certainly should have followed Johnson and Obdusky. And there was actually a case that came out of West Virginia, the northern district of West Virginia, which came out a few days before this order was entered. And the case was Parsley. It really nicely sums it up. Once a consumer, always a consumer. And so there's no question here that our client, Mr. Koontz, was a consumer. He signed the note, he signed the mortgage, he entered into this obligation. And the fact that there was a subsequent discharge does nothing to change his status. And we would also urge the court to hold, as we've argued before, that when a lender tries to collect an illegal fee and threatens foreclosure, that's debt collection and no disclaimer can fix it. Counsel, thanks very much. I think you have some time for me now. Good morning, Your Honors, and may it please the Court. My name is Alec Zerbaugh. I'm coming from Charleston, West Virginia, where I practice at Frost, Brown, Todd. With me here today is my colleague, Blake Humphrey. Together we represent S.N. Servicing Court. Appellant, as I think it's fairly evident in this case, is advancing an untenable theory of liability that flies in the face of a mountain of case law, the pure statutory text of the two consumer acts that we're dealing with. And it ultimately poses real danger in upsetting the application of the bankruptcy code as we know it. Namely, the mechanisms of reaffirmation and in turn discharge and how those work together and how obligations are pursued, say, in REM once a personal obligation is discharged through the course of bankruptcy. So I think the primary issues and really the primary questions for this Court are pretty clear. One, what is the effect of not reaffirming the debt proceeding through discharge and how does that relate to the very core definitions of the FDCPA and the CCPA? How consumer is defined under those acts and how debt is defined under the FDCPA? And I think we touched on this a little bit in the opening segment. The second primary issue is we're talking about the type of communication that's at issue here. Two letters, there's no dispute that there are additional communications. These are the allegations of the communications that are at issue in the complaint. Are those squarely debt collection activities? I believe the Lovegrove case that was discussed at length here makes clear that those are not. That those disclaimers are effective and they're used based on the expectations that are the very product of cases like Lovegrove and that nature. But I want to turn my attention real quickly just to build a foundation here looking at the actual definition that I referenced a moment ago. What a consumer is under these acts and what a debt is. Under the FDCPA and the CCPA share a substantively identical definition of consumer and that's a natural person obligated or allegedly obligated to pay a debt. And in turn a debt is any obligation or alleged obligation of a consumer. So there's this obvious tie of a personal obligation for a debt or to qualify as a consumer under these acts. So I read the briefs in this case or the district court opinion and I was very sympathetic to your argument about obligation. I'm not messing with you. But then I read Johnson and then on page 84 of Johnson I read the following sentence and that's about what happens in situations like where a personal liability is discharged. And then there's this sentence that says either way there can be no doubt that the surviving mortgage interest corresponds to a quote enforceable obligation of the debtor. Now I don't necessarily know where the Supreme Court got that idea but why isn't that case just it? Like it says in a situation where your personal liability is extinguished but the mortgage exists, the mortgage is an enforceable obligation of the debtor. Why doesn't that just end this issue? I don't know exactly the context around the Johnson case and where that line comes in. But the Supreme Court says that debtors, that a mortgage that's been, the personal liability has been discharged in bankruptcy remains an enforceable obligation of the debtor. And if that's true, I don't understand how this isn't an enforceable obligation. Yeah, I think that seems to be out of sequence with the litany of decisions. But yet it's the Supreme Court of the United States. I understand the hierarchy there. I appreciate that certainly. I think we look to the Obdusky case also from the United States Supreme Court and it talks particularly about what debt collection activity is in relation to... But this isn't about what debt collection activity is. This is about what an obligation is. And whether there remains, specifically as I understand the question is, a situation where there was a mortgage and a promissory note and the debtor's personal obligation was discharged in bankruptcy, but the mortgage has not been eliminated. Is there still an obligation on the part of that person? And I think there's really plausible arguments on both sides to how you think about it, except the Supreme Court seems to have pretty clearly to me, unless you can persuade me otherwise, have said, yes, that's still an enforceable obligation. Against the individual, I wish I were more familiar with that line in Johnson, but I don't think that that can square with the application of the bankruptcy. Well, let's look at the whole paragraph. The whole paragraph says, of the debtor, an enforceable obligation of the debtor. That's him. So the Johnson case is obviously dealing with a bankruptcy claim of the creditor in relation to the existing mortgage interest. So I think that's one distinction to draw there. So maybe the focus in Johnson wasn't what the realities are and what the obligations are post-discharge. And I think that's the distinction. That's clearly what we're dealing with here. I mean, there have been a number of cases that the Lovegrove case obviously is predominant. It's an unpublished opinion, but clearly persuasive. There's a separate question about whether what your client did was an effort to collect a debt. That to me is a different question. I think the answer there is squarely no, despite that language in Johnson. But it's not just Johnson, right? Obdusky also says that foreclosure is what you do to enforce or collect a debt. And so, I mean, I do feel like the Supreme Court is, I'm no expert in this, but I can read Supreme Court opinions. And they seem to be explaining twice how this works. I think the division there, and I'll pull some quotes from Obdusky here in a moment that I think brings this into a pretty clear picture. But there's this distinction between enforcing a debt in personam, right, when there's a personal obligation. And enforcing that via NREM mechanisms, which means pursuing your security interests through foreclosure. So there's a means via NREM foreclosure actions. But it's not like the statute defines this as a debt or an obligation that is enforceable in personam. Why would it exclude enforcement in REM? Why would the statutory definitions exclude that? I think the statutory definitions quite clearly contemplate, as I started with, that a consumer necessarily means that there's a personal obligation. It says a person with an obligation, right? I think that would be adding language to the statute. And a number of courts have looked at that very distinction, of course, between the in personam issue and the NREM issue. So I think that's squarely been decided. And that's the real effect of the bankruptcy code that Judge Hayden's mentioned. It seems like a scenario where Mr. Koontz wants to have his cake and eat it, too. There are really real ramifications, good and bad. But that's an argument against allowing ride-alongs, but that does not appear to be teed up before us. So you began by saying there were a mountain of cases to support your argument, but you haven't cited any of them. Can you tell us what you're relying on? Yes. We've referenced the Lovegrove case at length. There are also litany cases from the district courts of West Virginia. And the Lovegrove case is unpublished and non-presidential, and your colleague distinguished it on its facts. And I noted just a moment ago, it's apparent to me that that is an unpublished opinion, but it can serve for persuasive effects. And are there cases, just going back to my question, are there cases out there that say it's not an obligation in the meaning of the FDCPA if it can only be enforced in REM and not in personam? Which are those cases? Yes. So Judge Copenhaver, I think, is the first to acknowledge that, at least in the cases that I'm aware of being cited in the brief. And that comes from the Ballard case from the Southern District that's cited time and time again. These are West Virginia cases, West Virginia district court cases citing other West Virginia district court cases? I think that, in fact, Judge Copenhaver's original citation in the Ballard case is to a Second Circuit case, I believe, for this proposition. How about Fourth Circuit cases or Supreme Court cases? Well, I think the Lovegrove case ultimately hints on that. How about published Fourth Circuit cases or Supreme Court cases? On that point, I don't think so. I'm not aware of that. But the general gist there of that argument is that, and I think you hinted to this earlier, Judge Hayden, is that there's a real distinction between an obligation, as that means under the law, versus a motivation or the voluntary desire to continue to make payments on a loan. So can I move to the second question of is this an effort to collect on a debt? So I'm looking at the two letters. And so they both start by saying, well, the first one anyway, the one dated 2-2-23. It literally says we are attempting to collect a debt. That's literally what sentence one says. We're trying to collect a debt. That sounds like trying to collect a debt. So then we move on to the next sentence where it says, if you received a discharge in bankruptcy, which this individual did, and the debt was not reaffirmed, which is true, this correspondence is not and should not be an attempt to collect a debt. So, okay, we're going decently for you there. But then it adds these words, as to your, as for, I'm sorry, your personal liability. But this is the point that Judge Harris was making that these link. So I guess I would incorporate that. It's not as for your personal liability, but it is for your in rem liability. And the Supreme Court seems to have told me that an attempt to collect in rem is an attempt to collect a debt. So in some ways, this actually says this is an attempt to collect a debt as to any in rem liability. That's, in fact, what this is. And if attempting to collect a debt as to in rem is covered, then it seems like this letter not only doesn't disclaim that, it literally says we're trying to do that. First of all, just one note, one quick note on that disclaimer. It's nearly identical to that, which was apparent in the Lovegrove case. Lovegrove said something about we're going to foreclose on your house. No, it started with the phrase that this is an attempt to collect a debt. Because that seems like a very significant difference between the two letters. I mean, we were able to say in Lovegrove, oh, there's nothing threatening in this letter. But this one says unless you pay us, we're foreclosing on your house. That seems different. I think that's informational. I mean, in the sense that this individual knows that they've gone through bankruptcy, right? That their personal obligation has been discharged. They chose not to reaffirm. And the bankruptcy code explicitly permits post-personal discharge letters and communications for informational purposes to advise about the status of the in rem lien on the property. So I don't think that that's threatening or harmful as an individual who may be post-bankruptcy and not current on his payments and otherwise subject to a foreclosure to know where that stands. And that's it. Judge Harris, I meant to get back to this Obdusky case. And I wanted to drill down on this distinction that's attempted to be made by appellant here. First, what is the actual holding in that case? So this is a quote from Mr. Kuhn's brief. The U.S. Supreme Court has recently acknowledged that a non-recourse debt, one that can't be advanced against an individual in their personal capacity, that can be enforced only through foreclosure is still a debt under the FDCPA. That comes from the opening brief at page 26. And this is the holding which appears in the syllabus page of Obdusky from the Supreme Court. And I quote, a business engaged in no more than non-judicial foreclosure proceedings is not a debt collector. I mean, this letter is not even to the stage where SNSC would have engaged an attorney to foreclose on the property. It's rather at a pre-foreclosure stage advising of the status of the in-rim outstanding liability. I just want to continue reading from the letter where Judge Hytens left off. The next sentence says, but is instead a step in the enforcement of a mortgage lien against your property? So how is it not a step? It's certainly a step. It's a piece of information post the individual, the personal guarantee or the personal obligation discharge. And acknowledging that, okay, you, Mr. Koonce, have shed your personal liability on this loan. We still maintain, pursuant to the application of the bankruptcy code in our contractual agreement under the note, the right to ultimately exercise our rights to be made good or as good as possible, right? And I'll get back to that in a moment via pursuing our rights under security interest through foreclosure. So this is, you know, we're not even to the foreclosure step here. So I think the Obdusky case and the holding, the direct holding from that case, is magnified in its application to the letters that are at issue here. And that's a point I wanted to make. You know, you can't have your cake and eat it too. Judge Hytens might have been premature in bringing that subject up a moment ago, but that speaks to the sequence of what's going on here. At any time, Mr. Koonce can walk away from this house, and his tradeoff in bankruptcy was perhaps that he wouldn't qualify as a consumer under these acts, but that he doesn't have any more personal obligation on these loans. If you take it to the end, Judge Berner, I think through the foreclosure process, and ultimately say the lien value here is $75,000 and the house is sold at a foreclosure sale for $50,000, there's a deficiency judgment there of $25,000 that cannot ever be collected from Mr. Koonce. And that's the power and the benefit that he derived from the bankruptcy. Can you walk me through, if he had, counterfactually, if he had assumed the loan, what would the differences have been? I guess he clearly would be a, if he had assumed, if he had assumed the loan, you would concede he's a consumer then, right? Absolutely. Okay. So what else would happen had he, I'm just trying to understand the difference between these two things. What are the other things about the world that would be different had he done that? Well, I guess he'd be personally liable in the deficiency judgment example you just gave. So if he would have reaffirmed the debt to Chatons and then proceeded through the bankruptcy, there's a discharge of what other debts may have been subject to that bankruptcy, and he would have received a piece of communication that had some incorrect amount on that, he would have qualified as a consumer, and under the facts that were alleged, I believe that would have satisfied the 12B6 standard. And then further, again, if he defaulted, you had that example where the house is sold for 50 and he owes 75. In that situation, he would be still on the hook for the 25. Sorry, I should have seen that you were leading me to that point, but yes, absolutely. No, but I'm trying to think what else would have been different. I'm just trying to think of any, this is genuinely an informational question I'm trying to understand. What else would have been different in the world had he done that? I think you hit the nail on the head there, that with regard to that deficiency judgment and the scenario that I just gave, 75 outstanding on the lien versus a $50,000 foreclosure sale, SNSC, who operates on behalf of the actual owner of the loan, would have been able to pursue that deficiency judgment against Mr. Shuntz individually, right? That was the nature of – I guess are there any other, other than those two things, you would then concede he's covered under the statute, he'd be potentially liable for a deficiency judgment. Are there any other big picture differences that you're aware of? I don't think so. Not in the sequences I'm viewing of the facts that we're dealing with here. But if I could just make just a few quick points, I see that I'm running below five minutes. On these textual arguments, appellant advances the claim that we're trying to graft statutory language into for the proposition that there is a personal obligation that is required by both the definitions consumer and debt. And that's certainly not the case. Appellant retreats to this position of saying these are remedial statutes, but that by no means gives this court or appellant, for that matter, the ability to rewrite the clear language of those statutes. This just came up in the Parsley case that appellant has relied on. Judge Chambers effectively scoffed at that argument and said, sure enough, this is a remedial statute. And I quote, the WVCCPA expressly limits its grant of civil enforcement suits to consumers. This court has no authority to rewrite the act. And then there's a suggestion, although it wasn't touched on at argument, but it is addressed quite in detail in the briefs relying on this court's case in Guthrie and the Second Circuit's case in Garfield that SNSE is arguing that the bankruptcy code somehow entirely preempts or displaces the application of these consumer statutes. And that's not an argument that's been advanced at all. In fact, we've relied on a number of cases to offer distinguishing scenarios between, say, the Kuntz case, the Fabian case, the Lovegrove case where action under the FDCPA was not permitted, versus the Guthrie case, for example, which actually cites Lovegrove and the McGuire case in Croy. So suffice it to say, we're not advancing any claim of preemption and displacement of these consumer acts. Can I ask you just a very, I don't mean to, but you're running out of time, so I just want to make sure I can ask you a somewhat peripheral question maybe about the state law claims here. So the state law claims are in federal court on supplemental jurisdiction, is that right? Is that why they're before federal court? Yes, yeah, that's right. They trailed with the FDCPA claims. Okay. So once the district court dismisses the federal claims, there's a question about whether the district court should continue to exercise jurisdiction over the state claims or should dismiss them without prejudice so they can go back to state court. And there's a pretty strong presumption for not exercising jurisdiction over the supplemental repentance state claims if you're dismissing at the motion to dismiss stage. Did this ever come up? Did the district court make a judgment here that notwithstanding that general rule, he thought it was important to go ahead and reach the state law claims? Did this? He didn't, and I could only guess why that was the case, and my suggestion would be, Judge Harris, they're so intertwined, share the same definitions, that the court decided that in one fell swoop, for the purposes, I suppose, of judicial economy, that dismissing the federalism foul, isn't it? Yeah, and doesn't it sort of turn out that actually some of the state law claims don't fall under the same consumer definition? So it seems like this was kind of a... So I haven't examined the case on the supplemental jurisdiction issue or the federalism question that it may implicate, but from practice, I've seen state law claims go in these consumer actions with federal law claims at the motion to dismiss stage all the time. So I'm not certain on that issue. I was just wondering if it had come up. There were a couple of questions pending. I see that I'm out of time. I'm happy to address those or happy to rest. I think we're good. Thank you very much. Thank you all.  Judge Haytens, if I could turn to the Johnson case for a moment. I believe the language you quoted is really central to the argument that we're making, and I would also point out that what that language tells us is that a discharge doesn't eliminate the debt. It transforms the debt. It basically turns the debt from a personal liability debt into a non-recourse debt, and Johnson says that also on page 86, insofar as the mortgage interest that passes through a Chapter 7 liquidation is enforceable only against the debtor's property. This interest has the same properties as a non-recourse loan. So there is still a relationship between these parties. The note and the mortgage are the instruments that create the relationship and they're the instruments that define exactly what the rights and responsibilities are growing out of that relationship. Lovegrove, Judge Harris, you mentioned Lovegrove and the disclaimers. I think it's important to point out the differences in those disclaimers. In Lovegrove, it was the typical disclaimers that you see. This isn't an attempt to collect a debt and it's being provided for informational purposes only. But again, if we read the specific language in these two pieces of correspondence. Then what was it? I mean, I get Lovegrove is Lovegrove, but on the other hand, it's an unpublished opinion, which we're not bound by. I mean, we don't have to posit that Lovegrove was correct. Because I read that, I was like, then why are you sending me this letter? If that's not why you're sending me this letter, why are you sending me this letter? And I think the reason they're sending the letter is made abundantly clear from the disclaimer itself. It's the first thing that your eyes see because it's in capital letters. It's at the top of the page. And it says that we're not attempting to collect as to your personal liability. And this is a step in enforcing our foreclosure rights. And that's clearly a demand for a payment and a threat that foreclosure will follow if that payment isn't made. Just because threats are phrased nicely doesn't mean they're not threats. Exactly. And I would say a word about Obdusky. Obdusky said that an attorney who was participating in a non-judicial foreclosure is not a debt collector. That was the real issue that went up. But the court also said separately that where a lender or a servicer is engaged in foreclosure, that is debt collection. And that's the situation that we have here. We're talking about what a lender does, what a servicer does. And Obdusky stands for that very simple proposition. That is debt collection. And I'd also point out that we're not trying to graft anything into the definitions of the FDCPA. The fact of the matter is if you look at the definition of a consumer, it does not say personal obligation. What it says is obligation. Either an obligation or an alleged obligation. And the Johnson case tells us there is an obligation here. There is an enforceable obligation that is at its core a non-recourse obligation. And because there's an obligation, Mr. Coots qualifies as a consumer and is entitled to all of the protections and benefits of the FDCPA. Lastly, if I could address the state law claims. Judge Harris, I do not believe that issue was raised below whether or not he should address those attendant state law claims. But I would point out that the judge made an error in deciding that those state law claims should be dismissed because he didn't apply the right definition. There are three claims that we've asserted in our state law claims that are not debt collection claims. They don't fall within those provisions of the West Virginia CCPA. And so they're not subject to that more restrictive definition that talks about obligation or alleged obligation. It's a much broader definition. Even SN concedes that the judge did not apply the correct definition. And so we would, at a bare minimum, ask that those state law claims be remanded to state court so that the judge can apply the right definition as a threshold matter. And unless there are any questions, I think my time has expired. Thank you very much.  We will come down and greet counsel and then move on to our next case.
judges: Pamela A. Harris, Toby J. Heytens, Nicole G. Berner